FILED '09 JUN 30 13:13 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN EUGENE WELLS,                                    07-CV-1117-TC

                Petitioner,                  AMENDED FINDINGS AND
                                                     RECOMMENDATION

        v.

NANCY HOWTON,

                Respondent.
_____

COFFIN, Magistrate Judge:

    Presently before this court is the represented petitioner's
amended petition for habeas corpus relief (#18).  For the reasons
discussed below, the petition should be denied.

    This court entered a Findings and Recommendation ("F&R") in
this action on May 6, 2009 (#32).  Petitioner filed objections to
this court's F&R on May 20, 2009 and the State filed a response on
May 27, 2009.  This court deems petitioner's objections as a motion

Page 1 - AMENDED FINDINGS AND RECOMMENDATION

for reconsideration and files this Amended F&R, which supercedes the previous F&R.

## Background

Petitioner is in the custody of the Oregon Department of Corrections after convictions for two counts of sexual abuse in the first degree.

A Washington County grand jury returned an eight-count indictment for sexual abuse in the first degree. One count was dismissed on a motion by the State. Following a trial, a jury returned a verdict of guilty on two counts and not guilty on the remaining five counts.

Petitioner was sentenced under Measure 11 to 75 months in prison for each count, to run concurrently. Petitioner was also sentenced to 45 months of post-prison supervision and ordered to pay $10,000 in compensatory damages and unitary assessments totaling $1,210.

Evidence at his trial indicated that petitioner subjected a child younger than age 14 to sexual contact between September 5, 1999 and January 7, 2000.

After the petitioner filed a timely notice of appeal, the Oregon Court of Appeals affirmed the trial court without opinion and the Oregon Supreme Court denied review.

Petitioner filed an amended petition for post-conviction relief alleging numerous grounds for ineffective counsel. On June

8, 2004, the post-conviction trial court allowed petitioner to file a second amended petition "immediately" in order to assure that a July 8, 2004 trial date would not be affected. When petitioner filed a second amended petition on June 23, 2004, the court declined to accept the petition due to petitioner's failure to file it "immediately" at the direction of the court. After submission of the evidence and a brief argument, the court denied relief.

The Oregon Court of Appeals affirmed in a published opinion. Wells v. Santos, 211 Or. App. 413 (2007). The Oregon Supreme Court denied review.

In the amended petition presently before this court, petitioner, through counsel, asserts six claims. The first is he was deprived of the right to a meaningful appellate review by the state courts on automatic appeal and in state post-conviction proceedings, in violation of his constitutionally protected rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution. The second is that he was deprived of his right to be found guilty by a unanimous jury of any crime based only on proof beyond a reasonable doubt, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments. The third is that his trial counsel provided ineffective assistance under the Sixth and Fourteenth Amendments. The fourth is that he was deprived of due process and fundamental fairness in criminal proceedings as guaranteed by the Fifth and Fourteenth Amendments. The fifth is

that his Fifth and Fourteenth Amendment rights were violated because there was insufficient evidence to convict him and that he is actually innocent. The sixth is that the cumulative effect of the multiplicity of errors rendered his trial fundamentally unfair.

Discussion

I.    Defaulted Claims

Petitioner did not fairly present his first, second, fourth, fifth, and sixth claims to the Oregon Supreme Court as required by the doctrine of exhaustion. Additionally, petitioner did not fairly present paragraphs A, C, E, F, and G of the third claim. These issues cannot now be fairly presented to the Oregon Supreme Court. As such, they are procedurally defaulted.

A.    Relevant Law

A state prisoner must exhaust all available state remedies either on direct appeal or through collateral proceedings (e.g. state post-conviction relief) before a federal court may consider federal habeas corpus relief. 28 U.S.C. § 2254 (b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). A prisoner satisfies the exhaustion requirement by "fairly presenting" his claims to the highest state court with jurisdiction to consider them, thereby affording the state courts the opportunity to consider the allegations of legal error and correct any violations of its prisoner's federal rights. Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citing Duncan v. Henry, 513 U.S. 364, 365 (1995)). In

Oregon, this requirement is satisfied when the claim is fairly presented to the Oregon Supreme Court.  Peterson v. Lampert, 319 F.3d 1153, 1156 (9th Cir. 2003).

"[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." Gray v. Netherland, 518 U.S. 152, 162-63 (1996); see also Castillo v. McFadden, 399 F.3d 993, 998-99 (9th Cir. 2005) (citations omitted).  State appellate courts are not required to comb the trial court's decision or the parties' trial court pleadings to discover federal constitutional issue. See Castillo, 399 F.3d at 1000 ("The Arizona appeals court was not required to comb the trial court's decision to discover Castillo's federal constitutional issue.").

Furthermore, a petitioner must present the federal claims in a procedural context in which their merits will be considered. Castille v. Peoples, 489 U.S. 346, 351-52 (1989) (claim not fairly presented when raised for the first time on petition for review to state supreme court); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994) (failure to exhaust because claim was presented in a procedurally defective manner).

Accordingly, a federal claim is fairly presented to the state courts only if it was:  (1) properly presented to the state's supreme court, (2) as a federal question, (3) in the appropriate

petition or brief, and (4) in the proper procedural context so that its merits would be considered.

If a petitioner does not fairly present his federal claims in state court, and can no longer do so because they are procedurally barred under state law, the claims are technically exhausted. Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). However, in such cases, claims are procedurally defaulted in federal court because they were not properly exhausted. O'Sullivan, 526 U.S. at 848. The Supreme Court held that:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750.

"'Cause' is a legitimate excuse for the default, and 'prejudice' is actual harm resulting from the alleged constitutional violation." Thomas v. Lewis, 945 F.2d 1119, 1123 (9th Cir. 1991) (citation omitted).

Cause exists only where there is a showing that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986). The fact that trial counsel failed to recognize the factual or legal basis of the claim does not excuse

Page 6 - AMENDED FINDINGS AND RECOMMENDATION

a default.  Id. at 486.  Nor does an ineffective assistance of counsel claim constitute cause for the default if the ineffective-assistance claim was, itself, defaulted.  Edwards v. Carpenter, 529 U.S. 446, 450-51 (2000).  Since no constitutional right to counsel exists on a collateral proceeding, the failure to provide effective assistance at such proceedings does not constitute cause sufficient to relieve a default.  Coleman, 501 U.S. at 752.  Prejudice exists only if "actual and substantial disadvantage" resulting from the procedural default is shown.  See United States v. Frady, 456 U.S. 152, 170 (1982) (holding that petitioner has the "burden of showing, not merely that errors at trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage").

"[I]n the extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."  Murray, 477 U.S. at 496.

B.  Analysis

1.  First Claim for Relief

In his first claim, petitioner argues that he was denied meaningful review by the state courts on his direct appeal and post-conviction appeal.

Petitioner first argues that his counsel during his direct appeal was ineffective. However, he failed to raise this claim in his amended petition for post-conviction relief. Indeed, the amended petition only claimed that petitioner was represented by inadequate trial counsel.

Petitioner next argues that the post-conviction trial court improperly refused to allow petitioner to file a second amended petition. The petitioner filed his initial petition on October 20, 2003. This case was set for trial on July 8, 2004. An Amended Petition was filed on November 14, 2003.

The court's general order regarding filing and procedure requirements was filed on November 20, 2003, according the petitioner the right to further amend his petition no later than March 12, 2004. On April 20, 2004, the court allowed the withdrawal of petitioner's court-appointed counsel and for the petitioner to proceed pro se.

On June 8, 2004 the court allowed petitioner to be represented by new counsel and to file a second amended petition "immediately" in order to assure that the July 8, 2004 trial date would not be affected. Petitioner submitted a second amended petition and a motion for a continuance on June 23, 2004. The court did not accept the second amended petition due to petitioner's failure to file the second amended petition "immediately."

On June 24, 2004, petitioner filed a motion for direction on how to proceed and a motion to postpone trial.  The following day, petitioner filed an objection to the court's order to vacate the leave to file an amended petition.  A hearing was set for July 1, 2004.  On June 30, 2004, petitioner filed a motion for an extension of the post-conviction hearing date and requested leave to file a second amended petition.  At various times throughout his post-conviction appeal, petitioner was represented by different counsel or proceeded pro se.

The court denied the motion to extend the hearing date.  The court also held that the filing of a second amended petition would not be allowed as being untimely.

The Oregon Court of Appeals affirmed the post-conviction trial court's holding.  Petitioner argued that the post-conviction trial court abused its discretion by not allowing him to file a second amended petition because:  (1) petitioner did not have access to the trial transcripts until January 15, 2004; (2) petitioner's counsel misled petitioner regarding when the second amended petition had to be filed; (3) petitioner's counsel was involved in an accident that prevented him from filing the second amended petition prior to June 23, 2004.

As the court of appeals noted, under Oregon law, a post-conviction court has discretion to allow or deny a motion for leave to amend a post-conviction petition.  <u>Wells</u>, 211 Or. App. at 418

(citing <u>Luther v. State of Oregon</u>, 83 Or. App. 336, 345, <u>rev. den.</u>,
303 Or. 483 (1987)). To ensure that such discretion is
consistently applied, the Oregon Court of Appeals "identified four
considerations bearing on the appropriate exercise of discretion:
(1) the nature of the proposed amendments and their relationship to
the existing pleadings; (2) the prejudice, if any, to the opposing
party; (3) the timing of the proposed amendments and related
docketing concerns; and (4) the colorable merit of the proposed
amendments." <u>Wells</u>, 211 Or. App. at 418 (citing <u>Ramsey v.
Thompson</u>, 162 Or. App. 139, 145 (1993)).

The court of appeals concluded that the post-conviction trial
court did not abuse its discretion in refusing leave to file the
second amended petition. <u>Wells</u>, 211 Or. App. at 419. The court
noted that with the exception of petitioner's claim that he did not
have access to the trial transcripts until January 15, 2004, all of
the circumstances relied on by petitioner occurred after the March
12, 2004 deadline set by the post-conviction trial court to file an
amended petition. <u>Id.</u> With regard to the trial transcripts, the
court concluded that, "[b]ased on the lapse of time between January
15 and March 12, the post-conviction court reasonably could have
found that petitioner has not shown that he had pursued the filing
of an [sic] second amended complaint with proper diligence after
receiving the transcripts." <u>Id.</u>

This court concurs with the conclusion of the Oregon Court of Appeals that "given the procedural history of this case, petitioner had ample opportunity to put all of his claims before the court, had he merely complied with the court's initial deadline." Wells, 211 Or. App. at 419.

Accordingly, this court concludes that the Oregon Court of Appeals properly held that the post-conviction trial court did not abuse its discretion in denying petitioner's motion to file a second amended complaint. As a result, any claims not raised in the first amended petition, including petitioner's claim of ineffective counsel on his direct appeal, are procedurally defaulted.

Furthermore, petitioner has failed to demonstrate cause for failing to present this claim in state court, or prejudice. Since no constitutional right to counsel exists on a collateral proceeding, the failure of petitioner's counsel to file a timely second amended petition for post-conviction relief does not constitute cause sufficient to relieve the default. See Coleman, 501 U.S. at 752. Petitioner has also failed to demonstrate that a failure to consider this claim would result in a miscarriage of justice. His default, therefore, should not be excused, and this claim for relief should be denied.

2.   Second Claim for Relief

In his second claim, petitioner argues that his conviction, based on a non-unanimous jury verdict, violated his Sixth Amendment right to be found guilty beyond a reasonable doubt as interpreted by the United States Supreme Court in Blakely v. Washington, 542 U.S. 296 (2004).   Petitioner first made this argument in a successive petition to the post-conviction trial court while the trial court's denial of his initial petition for post-conviction relief was on appeal. (Ex. 126.)   The successive petition was denied by the post-conviction trial court as an improper successive petition. (Ex. 127.)  The Oregon Court of Appeals entered an order of summary affirmance of the post-conviction trial court.   (Ex. 130.)

All grounds for relief claimed in a petition for post-conviction relief must be asserted in the original or amended petition.  OR. REV. STAT. § 138.550(3).  Any grounds not asserted in the original or amended petition "are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition."  Id.

Petitioner argues that he was unable to make this argument in his initial petition for post-conviction relief because it was filed prior to the Supreme Court's opinion in Blakely.  Petitioner further argues that he could not have preserved the argument under

Page 12 - AMENDED FINDINGS AND RECOMMENDATION

the United States Supreme Court's opinion in Apprendi v. New Jersey, 530 U.S. 466 (2000) because the Oregon courts have consistently rejected such arguments and that the Court's opinion in Blakely offered a new approach to considering the issue of non-unanimous jury verdicts under the Sixth Amendment. Specifically, petitioner argues that the Supreme Court's holding in Blakely calls into question its holdings that state court convictions by non-unanimous juries do not violate the Sixth Amendment as applicable to the states by the Fourteenth Amendment in Johnson v. Louisiana, 406 U.S. 366 (1972), and Apodaca v. Oregon, 406 U.S. 404 (1972).

To support this argument, petitioner relies primarily on an opinion issued by the United States District Court for the Southern District of Ohio. Noland v. Hurley, 523 F. Supp. 2d 659 (S.D. Ohio 2007). In Noland, the district court conditionally granted a petition for habeas corpus where the Supreme Court handed down the opinion in Blakely after appellate briefs had been filed in the petitioner's state criminal case. Id. At 667. The issue raised in Noland, however, differs from the issued raised by petitioner in this case.

In Noland, the petitioner asserted that his sentence violated Blakely because he was sentenced to the maximum term under Ohio statutes that required judicial fact finding for imposition of the maximum sentence. Id. at 666. As the district court noted, the

<u>Noland</u> petitioner's sentence did not violate <u>Apprendi</u>.[1]  <u>Id.</u> at 668.  The district court in <u>Noland</u> observed that the Supreme Court's holding in <u>Blakely</u>,[2] however, called the <u>Noland</u> petitioner's sentence into question.

Unlike the petitioner in <u>Noland</u>, the petitioner in this case does not challenge the imposition of sentence under <u>Blakely</u>, but rather the validity of his convictions by a non-unanimous jury. Petitioner's argument that he could not have preserved this claim under <u>Apprendi</u> fails because, unlike the petitioner in <u>Noland</u>, who relied on the Court's different conclusions concerning sentencing in <u>Apprendi</u> and <u>Blakely</u>, petitioner relies on much of the analysis that is the same in <u>Blakely</u> and <u>Apprendi</u>.  This is illustrated by the fact that petitioner relies on Blackstone's observation, cited in <u>Apprendi</u> and <u>Blakely</u>, that "the truth of every accusation, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbours. . . ."

---

[1]  The Supreme Court held in <u>Apprendi</u> that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.

[2]  The Supreme Court held in <u>Blakely</u> that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose <u>solely on the basis of the facts reflected in the jury verdict or admitted by the defendant</u>" <u>Blakely</u>, 42 U.S. at 303 (emphasis in original).  The Ninth Circuit has noted that Blakely "worked a sea change in the body of sentencing law."  <u>United States v. Ameline</u>, 400 F.3d 646 at 652.

Apprendi, 530 U.S. at 477 (quoting 4 W. Blackstone, Commentaries on
the Laws of England 343 (1769) ("Blackstone"); see Blakely, 542
U.S. 301-02 (citing Blackstone at 343).

Petitioner next argues that the analyses in Apprendi and
Blakely differ because the Court focuses on the Fifth and
Fourteenth Amendments in Apprendi and the Sixth Amendment in
Blakely. A review of Apprendi, however, reveals that the Court did
indeed consider the Sixth Amendment in its analysis when it noted
that "under the Due Process Clause of the Fifth Amendment and the
notice and jury trial guarantees of the Sixth Amendment, any fact
(other than prior conviction) that increases the maximum penalty
for a crime must be charged in an indictment, submitted to a jury,
and proven beyond a reasonable doubt." Apprendi, 530 U.S. at 476
(quoting Jones v. United States, 526 U.S. 227, 243 n. 6 (1999)).

Therefore, this court concludes that petitioner could have
preserved his argument on appeal in his first amended petition for
post-conviction relief. Because this argument was not asserted in
the first amended petition for post-conviction relief, it is deemed
waived. Petitioner is now barred under Oregon law from filing any
additional appeals or PCR proceedings, and therefore cannot fairly
present any additional claims to the Oregon courts. Accordingly,
petitioner procedurally defaulted on the issue of conviction by a
non-unanimous jury. Petitioner has also failed to demonstrate that
a failure to consider this claim would result in a miscarriage of

justice.[3] His default, therefore, should not be excused, and this claim for relief should be denied.

        3.    Third Claim for Relief

    In his third claim, petitioner argues that trial counsel was inadequate for the following reasons:    (A)    failure to argue the necessity of separate consideration of the charges made in the indictment; (B) failure to object to the admissibility of video taped statements made by the victim; (C) failure to adequately cross-examine Dr. Betty Reiss ("Dr. Reiss") concerning her diagnosis that the victim had been sexually abused; (D) failure to secure an expert witness; (E) failure to adequately present a defense including presentation of character evidence; (F) failure to inform the jury concerning the "draconian sentencing law" (First Am. Pet. 16;) (G) failure to argue for jury instructions mandating a unanimous verdict and to object to the non-unanimous verdict; and (H) failure to object to an improper compensatory fine.

---

    [3]   Even if petitioner's claim concerning his conviction by a non-unanimous jury was not procedurally defaulted, it fails on the merits.  As this court has previously noted, "Blakely [did not address], much less [overturn], Apodaca's answer to whether a unanimous verdict is constitutionally required in state courts. The Blakely Court addressed the question whether enhancement of sentences based on facts not found by a jury violates the federal jury trial right. The Blakely case arose from a state in which unanimous jury verdicts are required in criminal trials. The question whether nonunanimity violates the federal constitution was not before the Blakely Court and was not a part of the Court's analysis."   Reedy v. Hill, No. 04-cv-525-TC, slip op. at 6 (D. Or. Feb. 13, 2008).

a.   Joinder

In paragraph A of his third claim, petitioner alleges that trial counsel was ineffective for failure to argue the necessity of separate consideration of the charges made in the indictment. Petitioner raised this issue in his petition to the post-conviction trial court. However, after the post-conviction trial court denied the claim, petitioner did not raise this issue with either the Oregon Court of Appeals or with the Oregon Supreme Court. Because petitioner did not fairly present the issue of joinder to the Oregon Supreme Court, he procedurally defaulted this claim.

Furthermore, petitioner has not demonstrated cause for failing to present this claim in state court, or prejudice. Petitioner has also failed to demonstrate that a failure to consider this claim would result in a miscarriage of justice. His default, therefore, should not be excused, and this claim for relief should be denied.

b.   CARES Video

In paragraph B of his third claim, petitioner alleges that trial counsel failed to object to the admission of the CARES video of the victim.   Petitioner properly raised this issue in his petition for post-conviction relief and in his petitions for review by the Oregon Court of Appeals and the Oregon Supreme Court. Accordingly, petitioner appears to have properly exhausted this claim in the state courts.   See Baldwin, 541 U.S. at 29.   The merits of this claim are discussed in section II below.

c.    Dr. Betty Reiss

In paragraph C of his third claim, petitioner alleges that trial counsel was ineffective for failure to adequately cross-examine Dr. Reiss concerning her diagnosis that the victim had been sexually abused.  The State argues that petitioner did not raise this issue in his petition for post-conviction relief, in his post-conviction appeal to the Oregon Court of Appeals, or in his post-conviction appeal to the Oregon Supreme Court.

Petitioner generally raised the issue of trial counsel's handling of Dr. Reiss's testimony in his petition for post-conviction relief.  Specifically, he argued that trial counsel should have objected to Dr. Reiss's testimony because: (1) there was no physical, technical, or scientific evidence requiring the need for expert testimony; and (2) given the lack of corroborating evidence, Dr. Reiss's testimony constituted nothing less than an opinion as to the credibility of the victim.  (Ex. 108.) Petitioner then argued before the Oregon Court of Appeals that: (1) Dr. Reiss's testimony was inadmissible because it was pure speculation as to the veracity of the victim's claims; and (2) statements of fault are not pertinent to medical diagnosis and treatment. (Ex. 119.) Before the Oregon Supreme Court, petitioner reasserted his arguments that Dr. Reiss's "vouching testimony, and statements of fault" were inadmissible and should have been objected to at trial.  (Ex. 122.)

Throughout the state court proceedings and the petition before this court, petitioner's claim concerning Dr. Reiss's testimony has been somewhat of a moving target. First, in his claims before the Oregon courts, petitioner argued that trial counsel should have objected to the admissibility of Dr. Reiss's testimony. However, before this court, petitioner argues that trial counsel failed to adequately cross-examine Dr. Reiss. Second, petitioner's argument before the post-conviction trial court that the available evidence at trial did not require the testimony of an expert witness is substantially different from the argument made before this court that the subject of Dr. Reiss's testimony was not appropriate for medical diagnosis. Finally, petitioner did not argue before the Oregon Supreme Court that Dr. Reiss's testimony was not adequately supported by other evidence.

Because petitioner made different arguments concerning trial counsel's handling of Dr. Reiss's testimony at various points, thereby depriving the Oregon Supreme Court of the opportunity to consider petitioner's claim concerning this issue, petitioner has procedurally defaulted on this claim.[4]

Furthermore, petitioner has not demonstrated cause for failing to present this claim in state court, or prejudice. Petitioner has also failed to demonstrate that a failure to consider this claim

---

[4] Even if petitioner's claim concerning trial counsel's handling of Dr. Reiss's testimony was not procedurally defaulted, as discussed in section II below, it fails on its merits.

Page 19 - AMENDED FINDINGS AND RECOMMENDATION

would result in a miscarriage of justice.  His default, therefore, should not be excused, and this claim for relief should be denied.

### d.    Expert for the Defense

In paragraph D of his third claim, petitioner alleges that trial counsel was ineffective because he failed to retain an expert for the defense.  Petitioner properly raised this issue in his petition for post-conviction relief and in his petitions for review to the Oregon Court of Appeals and the Oregon Supreme Court. Accordingly, petitioner appears to have properly exhausted this claim in the state courts.  See Baldwin, 541 U.S. at 29.  The merits of this claim are discussed in section II below.

### e.    Character Evidence

In paragraph E of his third claim, petitioner alleges that trial counsel failed to adequately present character evidence. Petitioner raised this claim in his amended petition for post-conviction relief.  (Ex. 108.)  However, he did not raise this issue in either his appeal to the Oregon Court of Appeals or the Oregon Supreme Court.  Accordingly, petitioner procedurally defaulted on this claim.

Furthermore, petitioner has not demonstrated cause for failing to present this claim in state court, or prejudice.  Petitioner has also failed to demonstrate that a failure to consider this claim would result in a miscarriage of justice.  His default, therefore, should not be excused, and this claim for relief should be denied.

f.   <u>Jury Instruction Concerning Sentencing</u>

In paragraph F of his third claim, petitioner alleges that trial counsel failed to seek to inform the jury regarding the "draconian sentencing laws" applicable in this case. (First Am. Pet. 16.) Petitioner's argument concerning this issue was not properly raised in either his direct appeal or his petition for post-conviction relief. Accordingly, petitioner procedurally defaulted on this claim.

Furthermore, petitioner has not demonstrated cause for failing to present this claim in state court, or prejudice. Petitioner has also failed to demonstrate that a failure to consider this claim would result in a miscarriage of justice. His default, therefore, should not be excused, and this claim for relief should be denied.

g.   <u>Non-Unanimous Jury Verdict</u>

In paragraph G of his third claim, petitioner alleges that trial counsel failed to adequately argue against a conviction by a non-unanimous jury. This claim is distinguished from petitioner's second claim for relief, challenging the constitutionality of the non-unanimous verdict itself. This claim concerns the failure of trial counsel to argue against such a non-unanimous verdict. Petitioner's argument concerning this issue was not properly raised in either his direct appeal or his petition for post-conviction relief. Accordingly, petitioner procedurally defaulted on this claim.

Furthermore, petitioner has not demonstrated cause for failing to present this claim in state court, or prejudice.  Petitioner has also failed to demonstrate that a failure to consider this claim would result in a miscarriage of justice.  His default, therefore, should not be excused, and this claim for relief should be denied.

4.    Fourth Claim for Relief

In his fourth claim, petitioner argues that the trial court made several errors, including:  (1) allowing testimony concerning the diagnosis of the victim; (2) admitting evidence of allegations occurring in a location over which the court had no jurisdiction; (3) admitting a chapter of Chicken Soup for the Kids' Soul into evidence; (4) admitting hearsay evidence without proper notice; (5) admitting hearsay statements; (6) excluding video evidence; (7) failing to properly instruct the jury; (8) imposing an improper fine; and (9) imposing an excessive sentence.

Petitioner did not argue that the trial court erred on any of these occasions at either his direct appeal or in his post-conviction petition.    Accordingly, petitioner procedurally defaulted on these claims.

Furthermore, petitioner has not demonstrated cause for failing to present this claim in state court, or prejudice. Petitioner has also failed to demonstrate that a failure to consider this claim result in a miscarriage of justice.  His default, therefore, should not be excused, and this claim for relief should be denied.

    5.    Fifth Claim for Relief

In his fifth claim, petitioner argues that there was
insufficient evidence to convict him of any of the crimes charged
and that he is actually innocent. Petitioner's arguments
concerning insufficient evidence and actual innocence were not
properly raised in either his direct appeal or his petition for
post-conviction relief. Accordingly, petitioner procedurally
defaulted on these issues.

Furthermore, petitioner has not demonstrated cause for failing
to present this claim in state court, or prejudice. Petitioner has
also failed to demonstrate that a failure to consider this claim
would result in a miscarriage of justice. His default, therefore,
should not be excused, and this claim for relief should be denied.

    6.    Sixth Claim for Relief

In his sixth claim, petitioner argues that cumulative error
rendered his trial fundamentally unfair. As with other claims, to
be properly exhausted, a claim for cumulative error must be fairly
presented to the state supreme court to apply controlling legal
principles to the facts bearing upon his constitutional claim. See
Solis v. Garcia, 219, F.3d 922, 930 (9th Cir. 2000) (district court
properly found that petitioner did not exhaust his state court
appeals on the claim of cumulative error before filing his habeas
petition in federal court). Petitioner's argument concerning
cumulative error was not properly raised in either his direct

appeal or his petition for post-conviction relief.  Accordingly, petitioner procedurally defaulted on the issue of cumulative error.

Furthermore, petitioner has not demonstrated cause for failing to present this claim in state court, or prejudice.  Petitioner has also failed to demonstrate that a failure to consider this claim result in a miscarriage of justice.  His default, therefore, should not be excused, and this claim for relief should be denied.

II.  Merits of Claims not Defaulted

A.   Standard of Review

Petitioner filed his original petition for habeas corpus relief after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Therefore, AEDPA applies to the review of this petition.

The relevant portion of AEDPA amended 28 U.S.C. § 2254 by adding the following:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

State court determinations need not be deferred to in every case. See Williams v. Taylor, 529 U.S. 362, 389 (2000) ("if, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail."). However,

> AEDPA plainly sought to ensure a level of deference to the determinations of state courts, provided those determinations did not conflict with federal law or apply federal law in an unreasonable way. Congress wished to curb delays, to prevent "retrials" on federal habeas, and to give effect to state convictions to the extent possible under law. When federal courts are able to fulfill these goals within the bounds of the law, AEDPA instructs them to do so.

Williams, 529 U.S. at 386 (citation omitted).

The Court in Williams also found different and independent meanings in the "contrary to" and "unreasonable application of" clauses of AEDPA. Under the "contrary to" clause, a federal court may only grant habeas relief if: (1) the state court applied a rule that contradicts the governing law set forth in Supreme Court case law; or (2) the case confronting the state court was materially indistinguishable from a Supreme Court decision, yet the court nevertheless arrived at a result different from Supreme Court precedent. Id. at 406. Under the "unreasonable application of" clause, a federal court may only grant habeas relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle

Page 25 - AMENDED FINDINGS AND RECOMMENDATION

to the facts of the prisoner's case." <u>Id.</u> at 412-13.[5]  The
evaluation of reasonableness is tested against an objective
standard. <u>Id.</u> at 409-10.  The Court also noted that:

> [T]he most important point is that an <u>unreasonable</u> application
> is different from an <u>incorrect</u> application of federal law. .
> . .  In § 2254(d)(1), Congress specifically used the word
> "unreasonable," and not a term like "erroneous" or
> "incorrect."  Under § 2254(d)(1)'s "unreasonable application"
> clause, then, a federal habeas court may not issue the writ
> simply because the court concludes in its independent judgment
> that the relevant state-court decision applied clearly
> established federal law erroneously or incorrectly.  Rather
> that application must also be unreasonable.

<u>Id.</u> at 410-11 (emphasis in original).

    B.   <u>Applicable Law for Ineffective Assistance of Counsel
Claims</u>

Review of a claim of ineffective assistance of counsel
involves a two-part analysis.

A petitioner alleging ineffective assistance of counsel must
first show that counsel "made errors so serious that counsel was
not functioning as the counsel guaranteed the defendant by the
Sixth Amendment." <u>Strickland v. Washington</u>, 466 U.S. 668, 687
(1984).  There is a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance. <u>Id.</u>
at 689.  Reasonableness is judged as of the time of counsel's

_____

[5] The Supreme Court has also noted that a state-court
decision may be an unreasonable application of clearly
established federal law if the "state court was unreasonable in
refusing to extend the governing legal principle to a context in
which the principle should have controlled." <u>Remdass v.
Angelone</u>, 530 U.S. 156, 166 (2000).

conduct, not in hindsight.[6]  Id. at 689-90.  The reasonableness of counsel's actions "may be determined or substantially influenced by defendant's own statements or actions."  Id. at 691.

The second part of the analysis looks at the consequence of any error counsel is found to have made.  The error must have been "so serious as to deprive the petitioner of a fair trial, a trial whose result is reliable."  Id.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  Id.  The petitioner must affirmatively prove the prejudice.  Id. at 693. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome . . . and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."  Id.  However, a petitioner "need not show that counsel's deficient conduct more likely than not altered the outcome of the case."  Id.  The petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id.

---

[6] "Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689.

Unless a petitioner shows both error and prejudice, "it cannot be said that a conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 686. Under AEDPA, the court reviews for objective unreasonableness the state court's conclusion as to whether counsel's performance was deficient or resulted in prejudice. Weaver v. Palmateer, 455 F.3d 958, 965 n.9 (9th Cir. 2006) (citing Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir. 2004)).

C.   Analysis of the Merits

 1.   Admission of CARES Video

Petitioner's first remaining argument, paragraph B of his third claim, is that trial counsel failed to object to the admission of video of the victim made by CARES employees. The post-conviction trial court concluded that:

> On the Cares [sic] video, there's no problem with [the CARES video tapes] because it was admissible testimony.
>
> The witnesses were present in the Court for cross-examination.  And it also formed the basis of the doctor's diagnosis.  And that's the main reason that the Cares [sic] video is admissible in the first place.

(Ex. 117, 18:10-16.)

Petitioner argues that his trial counsel was inadequate because he failed to object to admission of the CARES video which, he argues, violated OR. R. EV. 403, excluding evidence which has a probative value that is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury,

Page 28 - AMENDED FINDINGS AND RECOMMENDATION

or by considerations of undue delay or needless presentation of cumulative evidence. The post-conviction trial court's conclusion, however, was reasonable in light of the fact that the CARES video had probative value as the basis of Dr. Reiss's diagnosis. Because the CARES video served as the basis of Dr. Reiss's opinion, the presentation of the video could not be considered needless presentation of cumulative evidence. The state courts' conclusions that trial counsel's performance concerning the CARES video were adequate are based on a reasonable determination of the facts in light of the evidence presented and are afforded deference. <u>See</u> 28 U.S.C. § 2254(d)(2).

Petitioner has also failed to present any evidence that he was prejudiced by any potential error by trial counsel in failing to object to the admission of the CARES video.

Accordingly, this court concludes that petitioner's claim on this issue fails.

### 2.   <u>Dr. Betty Reiss</u>

Petitioner's next argument, paragraph C of his third claim, is that trial counsel failed to adequately oppose Dr. Reiss's testimony.   As discussed above, this claim is procedurally defaulted.   However, this claims also fails on the merits.   The post-conviction trial court concluded generally that "defense counsel gave good counsel [sic] advice, had good theories about how to handle evidentiary matters.   He [gave] vigorous reasonable and

effective help and legal help throughout the proceedings." (Ex. 117, 19-20.)

Petitioner's trial counsel did make an objection to Dr. Reiss's testimony concerning her "diagnosis" of the victim, which was overruled. (Ex. 101, 116:6-117:8.) Trial counsel then rigorously questioned Dr. Reiss concerning the physical evidence supporting her conclusions. (Ex. 101, 127:3-129:5) Petitioner has not presented any evidence that adequately overcomes the presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 687. To the contrary, trial counsel in this case both objected to the direct examination of Dr. Reiss and vigorously questioned her on cross-examination. The state courts' conclusions that trial counsel adequately opposed Dr. Reiss's testimony are based on a reasonable determination of the facts and are supported by the record. See 28 U.S.C. § 2254(d)(2).

Petitioner has also failed to present any evidence that he was prejudiced by any potential error by trial counsel in allegedly failing to adequately oppose Dr. Reiss's testimony.

Accordingly, this court concludes that petitioner's claim on this issue fails.

### 3.    Expert Witness for Defense

Petitioner's final remaining argument, paragraph D of his third claim, is that trial counsel was ineffective because he

failed to retain an expert for the defense.  The post-conviction trial court concluded that:

> Insofar as expert testimony on your behalf is concerned, I think I agreed with your counsel, (inaudible) dangerous to try to secure that as it was not to do it.
>
> I see no benefit to it.  I don't see how in any way it could have been helpful to you insofar as your situation is concerned.

(Ex. 117, 18:21-19:2.)

Petitioner argued before the state courts that trial counsel should have secured an expert witness to rebut Dr. Reiss's testimony.  (Ex. 108, 5:15-26; Ex. 119, 29-33; Ex. 122. 11.)  As the post-conviction trial court noted, an expert witness for the defense potentially could have resulted in more harm than good for petitioner's case.  The state courts' conclusions that trial counsel adequately assessed the risks and rewards of an expert witness for the defense are based on a reasonable determination of the facts in light of the evidence presented.  See 28 U.S.C. § 2254(d)(2).

Petitioner has also failed to present any evidence that he was prejudiced by any potential error by trial counsel in allegedly failing to secure an expert witness for the defense.

Accordingly, this court concludes that petitioner's claim on this issue fails.

All of petitioner's other arguments have been considered and found unpersuasive.

## Conclusion

The F&R of May 6, 2009 (#32) is vacated.  It is superceded by this Amended F&R.

For the reasons stated above, petitioners amended petition for habeas corpus relief (#18) should be denied as procedurally defaulted on claims 1, 2, 3(A), 3(C), 3(E), 3(F), 3(G), 4, 5, and 6.  Furthermore, the petition on claims 3(B), 3(C), and 3(D) should be denied on the merits as the state courts are entitled to deference and their determinations are supported by the record and prejudice has not been adequately demonstrated.  Relief on all claims should be denied and this action should be dismissed.

## Scheduling Order

The above F&R will be referred to a United States District Judge for review.  Objections, if any, are due ten days from today. If no objections are filed, review of the F&R will go under advisement on that date.  If objections are filed, a response to the objections is due ten days after the date the objections are served and the review of the F&R will go under advisement on that date.

DATED this 30 day of June 2009.

_____
Thomas Coffin
United States Magistrate Judge